IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
SOUTHERN DIVISION

BOB D. COOK,                              )
                                          )
            Plaintiff,                    )
                                          )
    v.                                    )    No. 07-3436-SSA-CV-S-WAK
                                          )
MICHAEL J. ASTRUE, Commissioner,          )
Social Security Administration,           )
                                          )
            Defendant.                    )

## ORDER

Claimant Bob D. Cook seeks judicial review,[1] pursuant to 42 U.S.C. § 405(g), of a final administrative decision denying Supplemental Security Income benefits under Title XVI of the Social Security Act, 42 U.S.C. §§ 1383 *et seq*. He claims he became disabled beginning June 26, 2002.[2] The parties' briefs were fully submitted, and on April 6, 2009, an oral argument was held.

"Title II of the Social Security Act provides for the payment of insurance benefits to persons who suffer from a physical or mental disability, and Title XVI provides for the payment of disability benefits to indigent persons. The Act further provides that 'an individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy . . . .' 42 U.S.C. § 423(d)(2)(A) (2003)." Lewis v. Barnhart, 353 F.3d 642, 645 (8th Cir. 2003).

---

[1] With the consent of the parties, this case was assigned to the undersigned United States Magistrate Judge, pursuant to the provisions of 28 U.S.C. § 636(c).

[2] Claimant originally alleged an onset date of disability of May 1, 1999 (as set out in his application for SSI benefits), but amended it orally at the hearing to June 26, 2002, due to his prior denial of SSI benefits on August 2, 2000, and his subsequent incarceration from October 2000 to June 2002.

In reviewing the administrative record, the court must sustain the Commissioner's decision if the findings are supported by substantial evidence on the record as a whole. 42 U.S.C. § 405(g); Young v. Apfel, 221 F.3d 1065, 1068 (8th Cir. 2000). The court may not, however, "rubber stamp" the Commissioner's decision, but must examine both the evidence that supports and detracts from the administrative determination. Piercy v. Bowen, 835 F.2d 190, 191 (8th Cir. 1987); Cline v. Sullivan, 939 F.2d 560, 564 (8th Cir. 1991).

The claimant has the initial burden of establishing the existence of a disability as defined by 42 U.S.C. § 423(d)(1). See Roth v. Shalala, 45 F.3d 279, 282 (8th Cir. 1995). To meet the statutory definition, "the claimant must show (1) that he has a medically determinable physical or mental impairment which will either last for at least twelve months or result in death, (2) that he is unable to engage in any substantial gainful activity, and (3) that this inability is the result of his impairment." McMillian v. Schweiker, 697 F.2d 215, 220 (8th Cir. 1983).

If the claimant establishes the impairment is sufficiently severe to prevent return to a former occupation, the burden shifts to the Commissioner to produce evidence the claimant can perform other substantial gainful employment. Buck v. Bowen, 885 F.2d 451, 454 (8th Cir. 1989). The Commissioner need not find a specific job opening for the claimant, but must demonstrate that substantial gainful activity is realistically within the capabilities of the claimant. McMillian, 697 F.2d at 221.

When reviewing the record to determine if there is substantial evidence to support the administrative decision, the court considers the educational background, work history and present age of the claimant; subjective complaints of pain or other impairments; claimant's description of physical activities and capabilities; the medical opinions given by treating and examining physicians; the corroboration by third parties of claimant's impairments; and the testimony of vocational experts when based upon proper hypothetical questions that fairly set forth the claimant's impairments. McMillian, 697 F.2d at 221.

Claimant Bob Cook was born in 1956, and has a high school equivalency (GED) education. Claimant has very a limited relevant work record. Claimant has no earnings reported since 1993, and intermittent and very minimal earnings for years prior to 1993. Claimant was in prison from October 2000 through June 2002 and from July 2003 to February 2004, and he

2

Case 6:07-cv-03436-WAK   Document 22   Filed 05/12/09   Page 2 of 10

served thirty days in June 2006.[3]  In his disability report and testimony before the ALJ, claimant alleged disability due to degenerative disc disease, left shoulder adhesive capsulitis, psoriasis, gastric esophageal reflux disease, restless leg syndrome, depression and history of alcohol abuse. Claimant alleged that these conditions prevent him from working because he can't lift, walk very far, stand for any period of time, or do any constant bending.  Claimant stated his mother does all of his household chores, he spends most of the day lying in bed and he has no drivers license. Claimant did state he did not have a driver's license because he had at least three convictions for driving under the influence of alcohol.  The ALJ found claimant's allegation of impairments of sufficient severity to prevent the performance of any sustained work to not be credible.  The ALJ found claimant had "some degenerative disc disease, a history of shoulder adhesive capsulitis, psoriasis, gastric esophageal reflux disease, a possible restless leg syndrome controlled by medication, mild depression or dysthymic disorder, a history of alcohol abuse, but no impairment or combination of impairments that meets or equals in severity the requirements of any impairment listed in Appendix 1, Subpart P, Regulations No. 4."  (Tr. 23.)

      At the hearing before the undersigned, plaintiff argued that the ALJ erred in failing to afford appropriate weight and controlling weight to the opinions and conclusions of claimant's treating physician; that the ALJ erred in failing to assess properly claimant's residual functional capacity (RFC); and erred in failing to find claimant's testimony credible.

### Background Summary

      On July 2, 2002, one week after claimant's disability onset, he completed the claimant questionnaire in connection with his application for disability and reported that pain in his back, legs, and left arm prevented him from completing his daily activities, but he also reported that acetaminophen and other over-the-counter medications helped relieve his pain.  Claimant wrote he could not dress himself and that his daily activities didn't consist of much because of his disability, but he also wrote that he could sweep, wash dishes, complete chores as long as he didn't have to lift anything, and attend activities such as church.  He also reported he could drive but that his driver's license was not eligible to be renewed until 2008.

---

[3]A claimant is not eligible for SSI benefits for any month in which he or she is a resident of a public institution such as a jail or prison.  20 C.F.R. § 416.211.
3

Prior to his release from prison in June 2002, claimant's medical records show he was treated for psoriasis, headaches, and for complaints of pain in his back, chest, left arm, shoulder and neck. He was given topical creams, prednisone, ibuprofen, acetaminophen and naproxen to control his symptoms. Claimant also received physical therapy for his diagnosis of shoulder adhesive capsulitis. By April 30, 2002, claimant was noted as having progress in range of motion and could actively towel his back with minimal pain. On May 30, 2002, the physical therapy notes show good active shoulder abduction to 90 degrees, also with some accompanying shoulder elevation, and could lift two pound weights with ten repetitions, both sitting and supine. On June 6, 2002, he was discharged from physical therapy.

On July 9, 2002, claimant presented to Bruce Harms, L.C.S.W., for mental health treatment. On examination, he was alert and oriented and his memory was intact. He was assessed major depression without psychotic features. On August 14, 2002, Cook returned for follow-up with Arifa Salam, M.D., and was found to be alert and oriented with logical thoughts. It was also noted, however, that the claimant appeared to be in a depressed mood, and reported problems with concentration and memory, and his psychomotor activity appeared retarded. Claimant was prescribed Zoloft to target his depression, and Doxepin for his reported insomnia. Three months later, on November 26, 2002, claimant returned to Dr. Salam and reported that he quit taking the Zoloft because he didn't notice improvement, and was evasive regarding dropping out of treatment for three months. Claimant now reported being severely depressed. Dr. Salam noted claimant to be oriented with fair judgment and nonpsychotic, but that his psychomotor activity was slow, his affect restricted, he had a strong odor of nicotine, and Cook's claimed sobriety for twenty months was questioned. Claimant was prescribed new medications for his depression and insomnia based on his reports that the previous medications were ineffective. On January 2, 2003, claimant again saw Dr. Salam who noted that claimant was alert and oriented, his speech was soft in tone, but he was otherwise normal. Claimant reported his mood to be improved, he appeared to be wider in range of affect, and his medications were continued. On that same date, Dr. Salam provided a medical source statement (MSS).

Dr. Salam's mental MSS found claimant's mental impairments to have moderate affect in several areas of functioning in the work environment, but also noted no significant impairments

4

Case 6:07-cv-03436-WAK   Document 22   Filed 05/12/09   Page 4 of 10

in many areas. Dr. Salam did not find claimant to be markedly limited in any area of functioning. Dr. Salam specifically found claimant to have the capacity to perform work-related mental activities on a sustained basis involving understanding, remembering and carrying out simple instructions; making judgments that are commensurate with the functions of unskilled work; responding appropriately to supervision, co-workers, and usual work situations; and dealing with changes in a routine work setting.

David Dale, D.O., provided a MSS on February 10, 2003. Prior to providing the MSS, Dr. Dale saw the claimant for the first time on October 28, 2002, and subsequently, on November 18 and December 12, 2002, and on January 5, 2003. Cook presented himself to Dr. Dale originally with complaints of pain in his shoulder, neck, lower back and leg. Dr. Dale examined claimant and assessed fibromyositis, chronic pulmonary disorder (COPD), and a lumbar strain. Dr. Dale prescribed Viagra, Topamax, and Zyprexa. On subsequent visits, Dr. Dale continued to assess lumbar sprain strain, COPD and fibromyositis. In the MSS, Dr. Dale found claimant to have limitations in his strength, finding that he could lift no more than eight pounds frequently in a typical eight-hour day; could stand or walk up to two hours in a regular eight-hour day, could sit for a total of two hours in a regular eight-hour day with no more than thirty minutes continuously, was limited in pushing or pulling, and could not perform repetition action work or work involving climbing, stooping, kneeling, crouching, crawling, heights, machinery, temperature extremes, vibrations or hazards. Dr. Dale also found claimant to have limitations on reaching, handling and finger movements. Dr. Dale stated claimant could generally not walk, sit or stand for longer than thirty minutes before resting in the prone position for twenty to thirty minutes. Dr. Dale noted plaintiff's limitations to be the result of fibromyositis.

In December 2004, John Demorlis, M.D., also provided an MSS. However, claimant was first evaluated by Dr. Demorlis on August 15, 2002, for complaints of pain in his arms, back, shoulders, and left calf and that he felt depressed. Claimant claimed to be functionally limited to walking an eighth of a mile, stand or sit for only twenty minutes, and lift only ten pounds due to back pain. Upon examination, claimant was noted as being clean, cooperative, and in no apparent distress. He had normal speech, flow of thought, insight and judgment, and his mood and affect were congruent. Claimant could perform the mental task of four of five serial sevens,

5

and name the day, date, season, and other similar mental tasks. Claimant's lungs were noted as being clear and well ventilated; however, it was noted that he has smoked two packs of cigarettes per day for thirty years. It was also noted that claimant is an alcoholic, but that he claims he has stopped drinking since he was incarcerated in September 2000. He noted that claimant was negative for pain on percussion of the vertebral column, had a full range of motion across his joints, had normal abduction of his left shoulder, and could walk heel-toe normally and squat without difficulty. He further noted that claimant's grip strength was full and he had normal gait and reflexes. When asked to forward elevate his shoulder, claimant elevated it to about ninety degrees, and when asked to do more, he said he could but that it hurts. Claimant's shoulder could passively be put through a full range of motion, and it was noted there was no peripheral edema. It was noted that claimant had dirt under all of his fingernails and that his hands were calloused. Dr. Demorlis assessed chronic lower back pain, painful left shoulder, alcoholism, tobacco use, and mild vitiligo.

     Dr. Demorlis again evaluated claimant on December 23, 2004, the date he provided his MSS. He assessed arthralgia and myalgia, psoriasis, and extensive tobacco use. His source statement also noted, in spite of claimant's report that he could not walk farther than one block, stand for longer than five minutes, or sit for more than ten to fifteen minutes, he moved around easily, stood for more than five minutes while at the examination, as well as sit for longer than ten to fifteen minutes on the examining table. Dr. Demorlis also noted claimant's hand palms were heavily calloused, he had dirt under all of his fingernails, and had well-defined muscle tone. It was also noted that claimant had no complaint of percussing the vertebral column (back) and no focal tender points on his back that would be consistent with fibromyalgia. Claimant's lungs were noted as being clear and well ventilated, and his heart rate regular. Claimant's mental status was noted as appropriate for his level of education. Claimant could do a full squat and walk on his heals and toes, and his gait was noted as normal.

     On April 27, 2005, Dr. Bhargava provided a mental MSS. Dr. Bhargava found plaintiff not to be significantly limited in (1) understanding and remembering very short and simple instructions, (2) asking simple questions and requesting assistance, and (3) being aware of normal hazards and taking appropriate precautions. Claimant was marked as moderately limited

6

in several areas, including extended concentration and memory, and personal responsibility with regard to work attendance, punctuality and interaction. Claimant was found not to be markedly limited in any area except an ability to follow detailed instructions.

### ALJ's Decision

After review of claimant's medical records, the testimony at the hearing, the vocational expert's opinions, and all the arguments presented, the ALJ found claimant has not been under a disability. The ALJ gave very little credibility to plaintiff's subjective complaints, and while considering the opinions of all doctors, gave controlling weight to Dr. Demorlis' examinations and diagnosis.

Subjective complaints of physical and/or mental health problems may be discounted when they are inconsistent with medical reports, daily activities or other such evidence. Dixon v. Barnhart, 353 F.3d 602, 605 (8th Cir. 2003); Guilliams v. Barnhart, 393 F.3d 798, 801 (8th Cir. 2005). "Where adequately explained and supported, credibility findings are for the ALJ to make." Lowe v. Apfel, 226 F.3d 969, 972 (8th Cir. 2000). In this case, based on claimant's very limited work history, severe alcohol abuse, medical entries indicating his hand palms were very calloused, and the fact that he had dirt under all his fingernails and well-defined muscle tone, this court cannot find that the ALJ's credibility judgment is not supported by substantial evidence in the record. This court finds there is substantial evidence to support the ALJ's conclusion that claimant is capable of light work, eight hours per day, forty hours per week.

The ALJ's reliance on the report of Dr. Demorlis is not error. "It is the ALJ's function to resolve conflicts among the opinions of various treating and examining physicians. See Jenkins v. Chater, 76 F.3d 231, 233 (8th Cir. 1996); Bentley v. Shalala, 52 F.3d 784, 785 (8th Cir. 1995). The ALJ may reject the conclusions of any medical expert, whether hired by the claimant or the government, if they are inconsistent with the record as a whole. Bentley, 52 F.3d at 786." Pearsall v. Massanari, 274 F.3d 1211, 1219 (8th Cir. 2001).

> The ALJ is required to assess the record as a whole to determine whether treating physicians' opinions are inconsistent with substantial evidence on the record. 20 C.F.R. § 404.1527(d)(2). 'A treating physician's opinion is generally given controlling weight, but is not inherently entitled to it.' Hacker v. Barnhart, 459 F.3d 934, 937 (8th Cir. 2006). See 20 C.F.R. § 404.1527(d)(2). An ALJ may elect under certain circumstances not to give controlling weight to treating doctors'

7

opinions. A physician's statement that is 'not supported by diagnoses based on objective evidence' will not support a finding of disability. Edwards v. Barnhart, 314 F.3d 964, 967 (8th Cir. 2003). If the doctor's opinion is 'inconsistent with or contrary to the medical evidence as a whole, the ALJ can accord it less weight." Id.; see also Hacker, 459 F.3d at 937; 20 C.F.R. § 404.1527(d)(2). It is the ALJ's duty to resolve conflicts in the evidence. See Hacker, 459 F.3d at 936.

Travis v. Astrue, 477 F.3d 1037, 1041 (8th Cir. 2007).

In this case, the ALJ found the opinions of the claimant's treating physicians to be based on claimant's subjective complaints, and to be inconsistent with the record as a whole. An ALJ is entitled to discount the opinion of a treating physician when that opinion is conclusory or inconsistent with the evidence of record. Samons v. Astrue, 497 F.3d 813, 819 (8th Cir.2007).

Claimant's argument that Dr. Demorlis did not review claimant's medical records as part of his consultive examination does not prevent the ALJ from relying on the consultive medical examinations Dr. Demorlis conducted and his corresponding findings. Although it would seem to be better practice to forward medical records to the physician conducting the consultive examination, this court is not willing to make a per se rule that failure to send medical records to be reviewed for consultive examinations automatically results in the opinion of that doctor not being entitled to substantial weight.

Claimant's argument that the ALJ failed to make specific objective physical characteristic findings, as set forth by SSR 96-8p, fails to establish reversible error. The RFC is a "function-by-function assessment based upon all the relevant evidence of an individual's ability to do work-related activities." SSR 96-8p. When determining whether a claimant can engage in substantial employment, an ALJ must consider the combination of the claimant's mental and physical impairments and determine the claimant's RFC. Masterson v. Barnhart, 363 F.3d 731, 737 (8th Cir. 2004). The ALJ must determine the claimant's RFC based on all relevant evidence, including medical records, observations of treating physicians and others, and the claimant's own descriptions of his limitations. Id. In this case, the ALJ did consider all medical records, all documents identified in the record as exhibits, and the testimony of the claimant at the hearing. Further, the ALJ's RFC of light work implicitly made findings as to claimant's ability to do work-related activities. See Masterson, 363 F.3d at 740 (ALJ's reference to claimant's past work

8

being heavy work necessarily defined the parameters of the exertional level at which Masterson was working).

Additionally, although the ALJ did not provide a function-by-function analysis, he did pose in a hypothetical to the vocational expert specifics as to the light-work RFC. The ALJ asked the vocational expert to consider a light-work RFC with limitations of low stress, and simple, repetitive tasks, citing this as more than fair to the claimant and consistent with his psychological medical history. The ALJ also asked the vocational expert to consider whether plaintiff could work if he had a basic RFC for light work, but based on his medical records had the following restrictions: preclusion from having to work around any type of caustic chemicals because of skin condition; limited to relatively clean environment with no caustic fumes or particular matter in the air; low stress, simple repetitive tasks, and preclusion from reaching overhead with non-dominate, left upper extremity. Based on such specific factors related to claimant's medical and mental health, the vocational expert found that there would be jobs which claimant could perform in the national economy. The ALJ also proposed a hypothetical to the vocational expert for consideration of a sedentary exertional level RFC, with the same restrictions as submitted with a light-work RFC. Again, the vocational expert found that there would be jobs that claimant could perform in the national economy. Thus, while it may be better practice to make specific objective physical characteristic findings in the ALJ's determination of RFC, a failure to do so is not reversible error when the ALJ has sufficiently developed the record as to claimant's RFC. In this case, the ALJ considered all relevant evidence, see Stewart v. Astrue, 2009 WL 537538 *18 (W.D. Mo. March 4, 2009), and sufficiently posed to the vocational expert claimant's impairments that he accepted as true, and excluded the alleged impairments that the ALJ had reason to discredit. See Pearsall v. Massanari, 274 F.3d 1211, 1220 (8th Cir. 2001). Therefore, this court finds the ALJ adequately considered and developed the record regarding claimant's medical and mental limitations and the vocational expert's testimony that claimant could perform work in the national economy, and the ALJ's determination of no disability was supported by substantial evidence.

9

As set forth above, this court finds substantial evidence[4] in the record to support the ALJ's decision. The Social Security Administration's decision that claimant is not disabled is supported by substantial evidence in the record.

It is, therefore,

ORDERED that the decision of the Commissioner is affirmed and this case is dismissed.

Dated this 12th day of May, 2009, at Jefferson City, Missouri.

/s/ *William A. Knox*

WILLIAM A. KNOX
United States Magistrate Judge

---

[4] "Substantial evidence is less than a preponderance, but enough that a reasonable mind might accept it as adequate to support a decision." Pearsall v. Massanari, 274 F.3d 1211, 1217 (8th Cir. 2001). If after reviewing the record as a whole, the court finds that it is possible to draw two inconsistent positions form the evidence and one of those positions represents the ALJ's findings, we must affirm the ALJ's decision. Matterson v. Barnhart, 363 F.3d 731, 736 (8th Cir. 2004).